1                UNITED STATES DISTRICT COURT

2                CENTRAL DISTRICT OF CALIFORNIA

3                     WESTERN DIVISION

4                          - - -

5        HONORABLE VIRGINIA A. PHILLIPS, DISTRICT JUDGE PRESIDING

6

7     TREVOR WOODS, et al.,              )
                                         )
8             Plaintiffs,                )
                                         )
9                                        )
                                         )
10           vs.                         ) No. CV 14-08374-VAP
                                         )
11                                       )
                                         )
12    JOHN B. FAGAN, et al.,             )
                                         )
13            Defendants.                )
      _____)

14

15

                REPORTER'S TRANSCRIPT OF PROCEEDINGS
16
                   *PRETRIAL CONFERENCE HEARING*
17
                    LOS ANGELES, CALIFORNIA
18
                     MONDAY, JUNE 6,2016
19

20    _____

21                    MARIA R. BUSTILLOS
                    OFFICIAL COURT REPORTER
22                      C.S.R. 12254
                   UNITED STATES COURTHOUSE
23                 312 NORTH SPRING STREET
                          ROOM 404
24            LOS ANGELES, CALIFORNIA 90012
                      (213) 894-2739
25

```
 1                    A P P E A R A N C E S

 2

 3

 4      ON BEHALF OF THE PLAINTIFFS,
        TREVOR WOODS, et al.:          THE COCHRAN FIRM -
 5                                      CALIFORNIA
                                        BY:  BRIAN T. DUNN, ESQ.
 6                                      4929 WILSHIRE BOULEVARD
                                        SUITE 1010
 7                                      LOS ANGELES, CALIFORNIA 90010
                                        (323)435-8205
 8

 9                                      LAW OFFICES OF JOHN FATTAHI
                                        BY:  JOHN V. FATTAHI, ESQ.
10                                      535 NORTH BRAND BOULEVARD
                                        SUITE 500
11                                      GLENDALE, CALIFORNIA 90010
                                        (818)839-1983
12

13

14      ON BEHALF OF THE DEFENDANTS,
        JOHN B. FAGAN, et al.:          LONG BEACH CITY ATTORNEY'S
15                                      OFFICE
                                        BY:  HOWARD DARRYL RUSSELL,
16                                      ESQ.
                                        333 WEST OCEAN BOULEVARD
17                                      11TH FLOOR
                                        LONG BEACH, CALIFORNIA 90802
18                                      (562)570-2200

19

20

21

22

23

24

25
```

1                        <u>**I N D E X**</u>

2                                                              <u>PAGE</u>
   PRETRIAL  CONFERENCE  HEARING:                               4
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              LOS ANGELES, CALIFORNIA; MONDAY, JUNE 6, 2016

 2                            -o0o-

 3              (COURT IN SESSION AT 2:31 P.M.)

 4         THE CLERK:  Calling item CV 14-08374-VAP:

 5  Woods v. City of Long Beach.

 6         Counsel, please state your appearance.

 7         MR. DUNN:  Good morning, Your Honor.

 8         Brian did you know on behalf of all remaining

 9  plaintiffs.

10         MR FATTAHI:  Good afternoon, Your Honor.

11         John Fattahi, also on behalf of the remaining

12  plaintiffs.

13         THE COURT:  Thank you.

14         MR. RUSSELL:  Good afternoon, Your Honor.  Howard

15  Russell for Corporal Fagan and Officer Martinez.

16         THE COURT:  Thank you.  All right.  This matter is

17  again on the Court's calendar for the pretrial conference.  I

18  don't know that there's anything outstanding, unless the

19  parties have something, but the matter is set for trial next

20  Tuesday.  Both sides ready to proceed?

21         MR. DUNN:  We are, Your Honor.

22         THE COURT:  All right.  Mr. Russell?

23         MR. RUSSELL:  The Defense is Your Honor, but with

24  the Court's indulgence if the trial is still ongoing when we

25  get to Friday, June 17th, I'd ask the Court if we could be
```

```
 1    dark that day because my wife has a surgery, and she's going
 2    to be admitted to the hospital.  And so I don't know if we're
 3    going to get there, but it is probably we should tell the
 4    jury ahead of time, because if we do get to a damages phase
 5    and beyond, we may not be done by Thursday the 16th.
 6            THE COURT:  That's fine.  Thanks for letting me
 7    know.  That's your estimate at this time for your case in
 8    chief?
 9            MR. DUNN:  We believe that we'll probably if we --
10    assuming we pick the jury by Tuesday afternoon, probably by
11    Thursday afternoon we'll be done with our liability phase.
12            THE COURT:  All right.  And so a day or two for
13    your case?
14            MR. RUSSELL:  Probably not even that much,
15    Your Honor, because I assume that many of the witnesses that
16    will be in the Defense case will be called in the plaintiff's
17    case.  The main case are the two defendant officers, and I
18    assume the plaintiffs will call some of our witnesses, as
19    well.  So we have a Defense expert in our case and maybe a
20    couple other officers, but I would think our -- the Defense
21    case could be done in a day.
22            THE COURT:  Well, why don't we do this:  I will
23    tell the jury -- the panel when we're selecting our jury
24    that, -- you know, normally I tell them they don't have to be
25    here on Mondays, but because it looks kind of quite feasible
```

| | |
|---|---|
| 1 | that they may be here -- well, let's see... So if the |
| 2 | Defense -- excuse me -- if the plaintiffs finish up on a |
| 3 | Thursday, that's the 16th. So if we're dark on the 17th, I'm |
| 4 | not here on the 20th. I have to go up to the Circuit. So... |
| 5 | They'd come back on the 21st. That should be fine. I don't |
| 6 | have another trial that week. So that's fine. And then |
| 7 | we'll just continue from there. So I'll just let the jury |
| 8 | know that we'll be in session the first three days -- the |
| 9 | middle three days of next week. |
| 10 | MR. RUSSELL: Fine, Your Honor. |
| 11 | THE COURT: And you think it would be fine to come |
| 12 | back on the Tuesday, the following week. |
| 13 | MR. RUSSELL: I do, Your Honor. I mean, it's |
| 14 | something that I expect -- |
| 15 | THE COURT: I don't need details but let us know. |
| 16 | MR. RUSSELL: Everything should go well, but thank |
| 17 | you. |
| 18 | THE COURT: Of course. All right. What I tell the |
| 19 | jury in a case where there's a possibility of more than one |
| 20 | phase, is that there -- there may be a second -- that the |
| 21 | case may proceed in more than one phase but that the total |
| 22 | amount of time, I think we could tell them, we don't -- |
| 23 | because the damages phase would be pretty brief, wouldn't it? |
| 24 | MR. DUNN: It would -- |
| 25 | THE COURT: Like a half a day at the most. |

```
 1              MR. DUNN:  I would agree, Your Honor.

 2              THE COURT:  Okay.  So that if I tell them that --

 3    excluding the time for their deliberations because we can't

 4    predict that -- we don't think this case will take more than

 5    eight days of their time and probably less.  That's a fair

 6    estimate.

 7              All right.  Are there any other issues either side

 8    wishes to bring up?

 9              MR. DUNN:  Very briefly, Your Honor.

10              As the Court is well aware, both of my clients are

11    incarcerated.  And with regard to the Court's procedure, they

12    would not be testifying, obviously, in the liability phase.

13    They would only be testifying if needed in the damages phase.

14    How does that procedurally work?  I mean, if they're called

15    for the first day of trial, is there going to be a lockup in

16    this building or around this area or are they going to be

17    driven back and forth everyday or --

18              THE COURT:  Where are they in custody?

19              MR. DUNN:  Trevor Woods just got moved to Tracy,

20    California -- just got moved.  And thankfully, Tyra Woodson

21    is at Chino which is not too far.

22              THE COURT:  All right.  Have you discussed this

23    with the marshals?

24              MR. DUNN:  Yes.  And there's a different policy in

25    Tracy than in Chino.  And essentially, they will bring --
```

1   they will bring them on any day that I ask them to be

2   brought; but the one question that I had is if they're here

3   in court, and it's just a -- kind of a stylistic question.

4   Are there going to be marshals standing around them?  For

5   example, if they're at the witness stand or if they're even

6   at counsel table, are they going to be allowed to wear

7   clothes that I can get them, or are they going to be in the

8   prison clothes?

9              THE COURT:  I could ask about that.  I don't know

10  what the marshal's policy is.  It seems to me, if you brought

11  the clothes, I would ask the marshals to accommodate that and

12  let them change.  When they're on the witness stand, there

13  would be -- well, it sort of depends, because if they're in

14  state custody, then there's usually a uniformed state custody

15  officer who's in the courtroom.

16             MR. DUNN:  But is he going to be right there?

17             THE COURT:  Well, the marshal's policy is always to

18  be seated near the door between the witness stand and the

19  door.

20             MR. DUNN:  Okay.

21             THE COURT:  We can accommodate -- now, their hands

22  can during trial, there hands can be unshackled.  And so what

23  we usually do -- this usually comes up in a criminal case

24  is -- so that the jury doesn't see them walking to the

25  witness stand shackled, we figure out the timing.

```
 1              MR. DUNN:  Okay.
 2              THE COURT:  So if you put them on first thing in
 3    the morning, we just have them on the witness stand when the
 4    jury enters the courtroom.  And if -- if necessary, I just
 5    have the jury take an extra recess so that -- when they're
 6    getting off the witness stand.
 7              MR. DUNN:  Okay.  It wouldn't be just -- it would
 8    only be the liability phase though and just for those
 9    two witnesses.
10              THE COURT:  Right.
11              MR. DUNN:  They won't be sitting here during the
12    case in chief.
13              THE COURT:  Do you want -- so you're not asking to
14    have them brought here during the case in chef?
15              MR. DUNN:  No.
16              THE COURT:  All right.
17              MR. DUNN:  Only in the liability phase, if we need
18    it.  Now, I imagine the Court will tell the jury -- I'll
19    certainly tell the jury as soon as I open my mouth, that my
20    clients aren't going to be here, they're incarcerated; not
21    for the liability phase.
22              THE COURT:  Well, I may do it, but you can repeat
23    it, of course, because I may tell -- but I -- during voir
24    dire when I tell them -- the jury panel what the case is
25    about or ask the typical question of, Do you know any of the
```

```
 1    parties, the officers will be there during voir dire but your

 2    clients won't.  So I'll just read their names and explain at

 3    that time, they're not present in the courtroom but they will

 4    be here at a later time.

 5            MR. DUNN:  Right.  We did ask the Court in the list

 6    of questions that we submitted to the Court, we did ask the

 7    Court -- I don't know if the Court will give the question to

 8    the jury but if that would be unduly prejudicial for any

 9    juror of the fact that are -- both of my clients are --

10            THE COURT:  I ask those kinds of questions as to

11    both sides.  Anybody -- you know, their feelings toward or

12    against law enforcement, someone who is incarcerated, and so

13    on.

14            MR. DUNN:  Thank you very much, Your Honor.

15            THE COURT:  So let me just follow-up with that

16    though in terms of the timing...

17            If the jury -- let's say the jury goes out at the

18    end of the day on that Thursday -- well, that's pretty

19    optimistic.  So let's say if the jury goes out on a Tuesday,

20    the second week, I think at that point, because they could

21    come back rather quickly -- you never know -- and sometimes

22    they come back rather quickly with the verdict.  And I want

23    to be able to go into the second phase, if they do that, as

24    soon as possible.  So we probably -- as soon as the jury goes

25    out to begin deliberating, you'll need to notify the marshals
```

```
 1    that we may need to get the plaintiffs here on pretty short
 2    notice.
 3              MR. DUNN:  Very well.
 4              THE COURT:  Who have you been dealing with at the
 5    marshal's service?
 6              MR. DUNN:  It's always different people,
 7    Your Honor.  Even from the last time we were going to do the
 8    trial till now, it is totally different people.
 9              THE COURT:  If they have any questions, please tell
10    them to contact me, but I will go ahead and get in contact
11    with them regarding the clothing.
12              MR. DUNN:  Thank you so much, Your Honor.
13              THE COURT:  I think that's appropriate.  All right.
14    Mr. Russell, any issues?
15              MR. RUSSELL:  Yes, Your Honor.  I don't know if the
16    Court was going to raise this at a different time, but when
17    we were here last, we had not had the opportunity to do
18    extended argument on the Court's ruling regarding the
19    tentative.  The Court's tentative regarding the motions in
20    limine and also on -- at the time of the last pretrial
21    conference, plaintiffs had submitted their proposed adverse
22    inference instruction, and the defendants had submitted an
23    objection to that.  And if it's appropriate, I'd like to
24    comment on --
25              THE COURT:  You want to argue it?
```

1          MR. RUSSELL:  -- on both of those issues.

2          THE COURT:  All right.  And you may also want to

3     update me as to if there's been anymore discovery that's been

4     done since the last pretrial conference.

5          MR. RUSSELL:  Well, Your Honor, the only discovery

6     that would be relevant to the Court's rulings on the motions

7     in limine, for example, are Mr. Fonzi, who's the Defense

8     expert, was deposed by Mr. Mr. Galipo, and Mr. Fattahi was

9     present.  So the to the extent that the Court had excluded

10    certain opinions based on an insufficient showing of the

11    methodology that Mr. Fonzi used, Mr. Fonzi stated during his

12    deposition that he was relying on California POST guidelines,

13    particularly, learning domain number 20, which is their use

14    of force learning domain.  And so I don't know -- the basis

15    of the plaintiff's objection was it seemed as though he was

16    just saying, I don't -- I think what they did was reasonable

17    because I think what they did was reasonable.  He actually

18    put some foundation for his opinion in that deposition.

19         THE COURT:  All right.  Well, are the -- let me see

20    if I can shortcut this a little bit.  Are the plaintiffs

21    seeking a *Daubert* hearing on his opinion?  There were several

22    of the opinions as I recall.

23         MR. DUNN:  I think if Mr. Fonzi can tie his

24    opinions into POST standards, then that would be sufficient;

25    but if they're legal conclusions or a discussion of the

 1    applicable law under state law or federal decisions, which is

 2    contained in his report, then I don't think that's an

 3    appropriate opinion for an expert.  So I think that as long

 4    as they can lay a foundation for opinions, like going through

 5    POST standards, then that wouldn't be necessarily

 6    objectionable as long as they're relevant POST standards, but

 7    we would maintain our objections and any legal conclusions,

 8    such as those contained in his report.

 9              THE COURT:  All right.

10              So then I -- I suppose I -- in light of that

11    position by the plaintiffs, I would perhaps alter my ruling

12    on that motion in limine in order to allow him to testify to

13    the extent that he does not violate the prohibition on giving

14    legal conclusions, et cetera.  And we can take it on a

15    question-by-question basis.

16              MR. RUSSELL:  Thank you, Your Honor.  The next

17    issue is the Court had made a ruling regarding what

18    information about the plaintiffs criminal history would be

19    admissible at trial.  And --

20              THE COURT:  In the liability phase -- I'm sorry.

21    In the damages phase.

22              MR. RUSSELL:  In the damages phase, Your Honor.

23              THE COURT:  In the damages phase.

24              MR. RUSSELL:  And my understanding of the Court's

25    ruling is that the Court allows defendants to introduce

```
1    evidence that Mr. Woods was convicted of a felony in 2009,

2    but we're not allowed to explain what the felony conviction

3    is for in that we can introduce evidence that Ms. Woodson was

4    convicted of a felony in 2003 with the same caveat.

5           THE COURT:  And also, I believe your -- under my

6    ruling, you're permitted to state what the sentence for each

7    them was because that would go to damages -- it would go to

8    the -- well, there's -- I mean, the plaintiffs aren't trying

9    to hide that they're in custody.

10          MR. RUSSELL:  Well, Your Honor, the -- the issue

11   that I want to raise with the Court is this:  Tyler Woods was

12   born in 1994; that's the decedent.  From 1995 to 1999,

13   Trevor Woods one of the plaintiffs, was incarcerated.  I want

14   to be able to address if we get to a damages phase that he

15   was not there for his trial because he was incarcerated out

16   of state.

17          THE COURT:  For those four years?

18          MR. RUSSELL:  Well, there's a lot of it, but I'm

19   starting with that four-year period.

20          THE COURT:  Why don't you -- let's do this:  Why

21   don't you tell me all the periods of time that you wish to

22   introduce that -- let's call him "dad" since there are two

23   Woods here -- was incarcerated.

24          MR. RUSSELL:  There's a period from 1995 until

25   1999.  There is a period --
```

```
 1            THE COURT:  I'm sorry to interrupt you again, but
 2    the decedent was born in '92?
 3            MR. RUSSELL:  '94.
 4            THE COURT:  I'm sorry.  Okay.
 5            MR. RUSSELL:  So there's a period of time from 1995
 6    to 1999 where Mr. Woods is incarcerated.  Part of that time
 7    he was in prison in Texas and part of that time he was in a
 8    halfway house in California.  So I anticipate that he will
 9    testify that he tried to maintain a relationship with
10    Tyler Woods, his son, the decedent, while he was
11    incarcerated; but I want to be able to at least tell the jury
12    that he was not there physically present with his son during
13    that four-year period.
14            THE COURT:  Well, wasn't -- didn't you just say he
15    was in a halfway house for part of that period?
16            MR. RUSSELL:  Six months.
17            THE COURT:  Right.
18            MR. RUSSELL:  Toward -- in 1999.  Then around 2000,
19    he wasn't real clear on this during his deposition -- but
20    around 2000, Mr. Woods violated his probation and went back
21    in prison --
22            THE COURT:  Parole you mean?
23            MR. RUSSELL:  Well, it wasn't clear from him,
24    whether he was on probation or parole at that time, but he
25    violated it and went back to prison.  He said "probation."
```

1          THE COURT:  All right.

2          MR. RUSSELL:  So that was another period of time

3    where he would have been incarcerated.

4          THE COURT:  All right.  From 2000 to --

5          MR. RUSSELL:  For a one-year period, roughly 2000

6    to 2001.

7          THE COURT:  Okay.

8          MR. RUSSELL:  And then in roughly 2002, that's the

9    incident where Ms. Woodson was arrested and convicted, but

10   Mr. Woods was tied into that incident.  It essentially was a

11   robbery, kidnapping of an electronic store manager.  And

12   Ms. Woodson was arrested outside the manager's apartment, and

13   Mr. Woods was basically on the run for several years during

14   that time frame.  So one comment -- and I don't know if it's

15   appropriate now where I can circle back to it, is that

16   because the felony convictions for Ms. Woodson and later from

17   Mr. Woods involved crimes of dishonesty, Ms. Woodson, for

18   example, was convicted of kidnapping, robbery and burglary

19   and false imprisonment, that because she's taking the witness

20   stand with her credibility in issue, I believe the defendant

21   should be able to ask questions about the felony convictions.

22   We don't want to go into the details of the crime, but I

23   don't want to leave the jury with the impression that maybe

24   she was convicted of a nonviolent drug offense and then got

25   caught up in some draconian punishment scheme.

```
 1              Mr. Woods, he was also convicted of those same
 2    crimes, but it wasn't until 2009 because --
 3              THE COURT:  He's a fugitive?
 4              MR. RUSSELL:  He was until approximately 2007 where
 5    he was arrested for bank robbery in a different jurisdiction.
 6    So if you look at the continuum, he is back and fourth
 7    between state custody and federal custody in various crimes,
 8    and then he goes in -- I think he finally started his
 9    sentence for the convictions that Ms. Woodson had --
10    somewhere around 2012 and he is incarcerated until 2030
11    something or 2040.
12              THE COURT:  But wasn't he convict -- you said he
13    was convicted in 2009.
14              MR. RUSSELL:  Of -- he was convicted of the crimes
15    for which he was -- participated with Ms. Woodson.
16              THE COURT:  The kidnapping -- or the kidnapping/
17    burglar -- or kidnapping/robbery.
18              MR. RUSSELL:  Right.  But he didn't start serving
19    the sentence for that, because he was finishing up a
20    sent- a federal sentence on bank robbery and then when he
21    finished that sentence, he was taken by the state to serve
22    his state sentence.  So really what we're asking for are two
23    things:  We're asking for one, to be able to let the jury
24    know that there were periods of incarceration.
25              THE COURT:  So what you want to do is you want to
```

```
1    introduce 404(b) evidence -- no it's not 404(b) -- excuse me.

2    You want to -- you want to introduce the evidence under the

3    rule that allows you to impeach a witness because of a crime

4    involving dishonesty.

5            MR. RUSSELL:  Correct, because once they take the

6    witness stand, their character for truthfulness is at issue.

7            THE COURT:  Right.  Do you have any cases to offer

8    me as to -- first of all, what their -- first of all, you'd

9    have to get the information as to exactly what the charges

10   were that -- that they stood convicted of and then what the

11   case law is with respect to the use of those convictions as

12   impeachment.

13           MR. RUSSELL:  I have their rap sheets, Your Honor,

14   which I can submit to the Court for review.  And what I can

15   do, especially since they're not even going to be present

16   until the week after next is, I could submit a very short

17   brief for the Court's consideration with the plaintiffs

18   having an opportunity.  And --

19           THE COURT:  All right.  So you need to specify

20   exactly which convictions backed up by the rap sheet and the

21   case law that would support your request to have the jury

22   informed because these go to credibility and then the

23   plaintiffs can respond.

24           MR. RUSSELL:  Thank you, Your Honor.

25           THE COURT:  So you need to -- let's see today is
```

```
 1    the 6th.  So you need to file that by the end of the week,

 2    and then the plaintiffs can respond by the middle of next

 3    week.

 4              MR. RUSSELL:  Thank you, Your Honor.

 5              THE COURT:  Mr. Dunn...

 6              MR. DUNN:  Yes, Your Honor.  Could we have a little

 7    more as to the middle of next week?

 8              THE COURT:  How about -- it sort of depends on how

 9    quickly you move the case along because I will need to make a

10    ruling on it before -- well, before the time the jury goes

11    out to deliberate.  So Thursday of next week at the latest.

12              MR. DUNN:  And but just to clarify, this is not

13    something that I'm going to have to consider in the opening

14    statement phase of trial.

15              THE COURT:  It shouldn't be mentioned in the

16    openings.

17              MR. DUNN:  Very well.  Thank you.

18              THE COURT:  All right.

19              MR. RUSSELL:  Your Honor, also, your tentative

20    rulings addressed some things that are no longer at issue in

21    the case.  For example, the Defense had moved to exclude

22    other acts evidence.  And the Court denied that request and

23    allowed the plaintiffs to discuss other cases involving

24    excessive force by the Long Beach Police Department.  Because

25    there's no Monell claim in the case.  It's just a
```

```
 1    straightforward 14th amendment claim by the plaintiffs, there
 2    should be no reason --
 3                THE COURT:  The City is no longer a party.
 4                MR. RUSSELL:  Correct.
 5                THE COURT:  All right.  Then I think such evidence
 6    should not be offered.
 7                MR. RUSSELL:  There was also --
 8                THE COURT:  Any objection from the plaintiffs on
 9    that?
10                MR FATTAHI:  Not on -- not regarding other officers
11    unrelated to the two defendants.
12                THE COURT:  All right.
13                MR. RUSSELL:  And, Your Honor, I assume that if any
14    evidence is going to come in regarding the defendant
15    officers, it would be a punitive damages phase as opposed to
16    the liability phase, because again, I don't know how that
17    evidence would be relevant to this because that is habit
18    evidence in 404(b).
19                THE COURT:  Are you planning to introduce in the
20    liability phase?
21                MR FATTAHI:  I think I agree that it would only
22    come in in the punitive damages phase.  That would be the
23    only relevance now that the City is out.
24                THE COURT:  All right.
25                MR. RUSSELL:  Your Honor, the Defense moved in
```

```
1    limine to exclude the decedent's pain and suffering evidence.
2    The Court had denied that motion.  That was when there was a
3    fourth amendment claim and the decedent's child, NW, stood in
4    his place on that claim.  Because that claim no longer
5    exists, then no evidence of Mr. Tyler Woods' pain and
6    suffering is at all relevant to the case, especially since
7    the two plaintiffs were not there to witness it or experience
8    it.
9            THE COURT:  You couldn't get it under a bystander
10   theory.
11           MR. RUSSELL:  Well, they weren't there though.
12           THE COURT:  That's what I mean.  They couldn't.
13   They could not.
14           MR. RUSSELL:  Oh.
15           THE COURT:  All right.  The plaintiffs have any
16   response to that?
17           MR. DUNN:  I think he's right, Your Honor.
18           THE COURT:  All right.  Thank you.  Anything else?
19           MR. RUSSELL:  In the adverse written instruction.
20   The first piece of the adverse inference instruction was that
21   Officer Daniel Martinez's original written report regarding
22   the incident, that was one of the items listed.  And the
23   Defense objections, I believe, made the case, that officers
24   will do a report.  The report will be reviewed and then the
25   report will be finalized but draft versions do not exist.
```

1    They're not kept.  They're not maintained in the computer

2    system.  And I attached the objection -- a declaration from

3    Lieutenant Cox, who is the homicide lieutenant that oversees

4    all the officer-involved investigations.  And I believe it

5    would be unfair to allow reference to a piece of evidence

6    that doesn't exist.  I understand the Court's ruling that if

7    there's evidence that exists that wasn't turned over, that's

8    one thing; but there are no -- there is no quote, unquote,

9    original report in existence and it never has been after the

10   day that the report was finalized.  Now, we don't keep that.

11   And so I think it would be unfair to the Defense to allow the

12   jury to infer that there was something in Officer Martinez's

13   report that's being hidden from them, because he testified in

14   deposition that he made changes.  He testified to what they

15   are.  We have witnesses available to come in and talk about

16   the storage of the ESI, but that's the first item that I want

17   to object to in the adverse inference instruction.

18              THE COURT:  Let me see if I have --

19              MR. RUSSELL:  It is document number 87.

20              THE COURT:  I have that right in front of me.  So

21   that's item number one.  All right.  Mr. Fattahi and

22   Mr. Dunn?

23              MR FATTAHI:  Yes.  The issue is that the original

24   report -- the draft was printed out, I believe, was his

25   testimony -- that's Officer Martinez and given to a

```
 1    detective, who then instructed him to make certain changes
 2    and then the changes were made either by him or somebody
 3    else.  The problem is, we have the officer testifying as to
 4    what the changes were, but that printed-out document was
 5    destroyed ostensibly, because it hasn't been produced in this
 6    case.  So to enable him to testify about what the changes
 7    were when the original document was never produced -- and I
 8    think -- obviously, I would think that litigation would have
 9    been reasonably foreseeable at that time.  So it would have
10    been a duty to preserve that evidence.  So I think the
11    instruction would be proper to allow the jury to draw the
12    inference that that original report would not have not been
13    helpful to the officer's version of events.
14              THE COURT:  I'm going to have to defer ruling on
15    that item, because I would allow testimony.  Now, I don't
16    know that it necessarily has to be in front of the jury but
17    testimony from others in the department that you've just
18    proffered as to whether or not -- as to what the department's
19    policy was about keeping the original written report -- so
20    I'll defer -- I mean, this is not an instruction that I would
21    give at the beginning of the case in any event.  So I will
22    see what the evidence -- see how the evidence develops on
23    that issue.
24              MR. RUSSELL:  Thank you, Your Honor.
25              The same argument as to number two:  There are no
```

1   audio recorded statements from Officer Fagan or

2   Officer Martinez.  The Long Beach Police Department's policy

3   which may be contrary to the Court's experience with other

4   agencies, does -- they do not audiotape or videotape

5   statements from officers involved in an officer-involved

6   shooting.  They will get a written police report and that's

7   the statement from the officer.  So this is another piece of

8   evidence which does not exist and has never existed.

9          THE COURT:  Well, go ahead Mr. Fattahi.

10         MR FATTAHI:  I believe it was Officer Fagan.  It

11   may have also been Officer Martinez who testified at

12   deposition that he did give a statement in an administrative

13   proceeding about what happened during the shooting incident.

14   It was recorded.  So I don't understand the representation

15   that there is no recording.  There isn't a recording as a

16   matter of policy in every shooting done by the department who

17   is internally investigating it.  They're -- they're just

18   required to write a report.  They don't give recorded

19   statements, but in this case, there was an administrative

20   proceeding and the officer testified that he gave a recorded

21   statement.  So I think that's the basis for this adverse

22   inference instruction.

23         THE COURT:  Well, was the -- if I'm understanding

24   counsel's respective positions, Long Beach after an

25   officer-involved shooting does not interview the officer and

```
 1    record that interview, but if one or more of the officers
 2    testified during discovery in this case that there was an
 3    administrative proceeding which could mean something entirely
 4    different, that was videotaped or audiotaped, then that
 5    should be turned over.  Is that the discrepancy here?
 6              MR. RUSSELL:  It -- it may be a misunderstanding on
 7    my part of what counsel was seeking with the motion,
 8    Your Honor; but generally speaking, the homicide
 9    investigators that are in charge of the officer-involved
10    shooting investigation, do not interview or record statements
11    from the officers.  If --
12              THE COURT:  Right.  Right.  If that -- what you're
13    talking about though is an interview that takes place
14    immediately or shortly after the shooting; correct?
15              MR. RUSSELL:  Right, which is what I would assume
16    they were asking for in discovery and what they were moving
17    to go exclude.  If they're moving to exclude something --
18              THE COURT:  Let me interrupt you again.  What was
19    the exact wording of the discovery request -- all recorded
20    statements?
21              MR. FATTAHI:  It was very broad and specific.  It
22    was all recorded statements, including statements made to
23    homicide, internal affairs, any administrative investigation.
24    It clearly would have covered all these types of --
25              THE COURT:  So what you're referring to is
```

```
1    something that one or more of the officers said during their

2    depositions in this case about an administrative hearing?

3    MR. FATTAHI:  Correct.  That is when we learned about the

4    administrative proceeding was at the deposition.

5              THE COURT:  What kind of an administrative

6    proceeding was it, do you know?

7              MR FATTAHI:  I believe it was a disciplinary

8    proceeding.  We don't have any of the documents relating to

9    it, but that's what the officer testified to.

10             THE COURT:  So that should have been turned over.

11             MR. RUSSELL:  Your Honor, again, I'm not aware of

12   any audio-recorded statements, but I will -- if -- I don't

13   know off the top of my head what the officer said in their

14   deposition.  And I understand the Court's ruling, but I think

15   if the Court's ruling is to give an adverse inference

16   instruction on that, then at least it has to be further

17   tailored to indicate which point in the hearing it would have

18   come out, but the problem is the Court has already excluded

19   the administrative hearing results, because it's a different

20   standard.

21             THE COURT:  It is a different standard, but if it

22   was testimony that was given -- and I assume under oath --

23   but given in an earlier proceeding and it -- whether or not,

24   the conclusion of such an administrative hearing is

25   admissible and I've ruled that it isn't, because there's a
```

```
 1    different standard -- if someone gave testimony during it,
 2    it's discoverable, number one, and number two, it --
 3    conceivably, if it was given under oath, could be used to
 4    impeach the officers if they say something different about
 5    the way the events occurred in the courtroom than what they
 6    said in the administrative hearing, which is another way of
 7    saying it's discoverable.
 8              MR. RUSSELL:  I understand, Your Honor.  I'm not in
 9    the position to make further argument on it.  Now that I
10    understand what exactly the plaintiff is trying to exclude, I
11    can go back and look in my file and see if that exists.
12              THE COURT:  Well --
13              MR. RUSSELL:  And if --
14              THE COURT:  -- the motion itself quoted, I believe,
15    from the officer's deposition saying, Yes, I gave this
16    testimony and it was recorded.  So we have the officer
17    admitting that there is a recording of earlier testimony.
18              And if you -- so I would at this point think that
19    the way it -- the adverse inference instruction as to
20    paragraph two, is appropriate.  Are there any other
21    paragraphs that you object to?
22              MR. RUSSELL:  There are, Your Honor.
23              On number three, on the video-recorded surveillance
24    footage, none of it shows the shooting, and so to allow the
25    jury to draw the inference that the video is being withheld
```

```
1    because the pertinent event is displayed and it somehow
2    doesn't show what the Defense wants it to show --
3              THE COURT:  Well, wait a minute.  If -- you're
4    representing that it doesn't show any relevant events, but
5    has it been turned over to the plaintiffs?
6              MR. RUSSELL:  No, because the plaintiff made the
7    motion and the Court made the ruling.  And so at that point,
8    discovery was cut off as I thought.  I did not -- I didn't
9    expect that --
10             THE COURT:  I guess my point is this:  Because it
11   wasn't turned over in discovery in a timely manner, the
12   plaintiffs have no way of verifying the representation from
13   the Defense that it doesn't show anything.  You can't -- in
14   other words, you can't refuse to turn over something that is
15   properly discoverable, unless you have a legitimate claim of
16   privilege which didn't exist as to this piece of evidence and
17   then say, Oh, but it doesn't have anything on it.  So --
18   because you didn't turn it over.  So they don't know if it
19   has anything on it.
20             MR. RUSSELL:  I understand, Your Honor.  And,
21   again, the only -- I don't expect the Court to change its
22   ruling, and I understand the ruling; but once again, there
23   was an agreement that I had with Mr. Fattahi to turn over
24   materials beyond the discovery deadline, and then when the
25   Court issued its order, no further materials were turned
```

```
1    over.  So I -- I accept the Court's ruling.  I -- again, I'm

2    objecting for the record on 403 grounds that the evidence

3    would not have been -- show anything relevant, but I'm just

4    going to put on the record the objection.

5              THE COURT:  All right.

6              MR. RUSSELL:  The same objection as to number four.

7    And, again, it's one of those things where channel one is

8    where everything took place.  That's been testified to.  That

9    was turned over.  So the objection is that there --

10             THE COURT:  Well, you can, of course, put on

11   testimony to try to -- I mean, this is a rebuttable

12   inference.  So if you want to put on testimony from a

13   witness, you may do so; but you're going to come -- you're

14   opening the door for inquiry in front of the jury about

15   what's required in discovery which can be a little bit messy

16   but...

17             MR. RUSSELL:  I understand, Your Honor.

18             Number five, I think we've -- number five, again --

19             THE COURT:  That's now moot I think.

20             MR. RUSSELL:  It is, unless we get to a punitive

21   damages phase and I'll revisit it at that point.  And number

22   six, we turned over the policies.  The policies are there.

23   So I'm not sure what training materials they're looking for

24   other than training materials that are beyond the policies,

25   such as advanced officer training, but if it's a rebuttable
```

```
1    presumption, then I'm able to have the officers testify that

2    they went through training and that --

3              THE COURT:  But why didn't you turn over -- I mean,

4    were there any written materials covered --

5              MR. RUSSELL:  I know that we --

6              THE COURT:  -- because that's what you're required

7    to turn over.

8              MR. RUSSELL:  Right.  And it's not something

9    that they -- I know that I had gathered it, and I know

10   that -- I don't remember if it was for this case or another

11   case -- in fact, I think it was for another case.  So it's

12   something where it's -- the recordkeeping is not great and

13   the recordkeeping is pretty much from I want to say roughly

14   2012, 2013 on and some of the materials we're asking for

15   farther back, but I understand the Court's ruling, and I'll

16   consider whether or not it's tactically sound to try and

17   rebut the presumption through evidence.

18             THE COURT:  All right.  All right.

19             MR. RUSSELL:  And then the only other issue,

20   Your Honor, and it's probably something that the Court will

21   not address until we finalize jury instructions after

22   evidence... but the Defense sees this case under the

23   14th amendment, given the case law in the Ninth Circuit as,

24   in order to be liable, Officer Martinez and Corporal Fagan

25   must have had an intent to harm Tyler Woods without a
```

1    legitimate law enforcement purpose, because the evidence is

2    going to be that their interaction with him during the

3    shooting went very quickly -- probably less than a minute.

4            And I know in the disputed instructions there was

5    some discussion from the plaintiff about the standard is

6    shocking the conscience as opposed to the intent to harm.

7    Now, an intent to harm, absent a law enforcement purpose,

8    could shock the conscience, but the -- the semantics here are

9    very important, because if the jury and the Court under a

10   Rule 50(a) motion is looking at an intent to harm standard,

11   then the evidence will be viewed one way, but if the evidence

12   is being viewed through a standard of does this conduct of

13   this many shots under these circumstances shock the

14   conscience, it's different.  And so I would just ask before

15   we get started on Tuesday, if the Court is inclined to tell

16   us what --

17           THE COURT:  Which instruction --

18           MR. RUSSELL:  -- what standard it -- what

19   instruction it believes the Court is going to give during the

20   liability phase on the 14th amendment claim.  Then we'll know

21   how to proceed both for Rule 50(a) motion, as well as

22   presentation of evidence.

23           THE COURT:  All right.  Mr. Fattahi?  Or Mr. Dunn?

24           MR FATTAHI:  I think the Ninth Circuit law is

25   pretty clear at this point that the 14th amendment standard

1    is going to be either a purpose to harm or deliberate

2    indifferent standard.  And that's going to depend on whether

3    the jury finds -- and I think the jury has to find one way or

4    the other whether the officers had time to actually

5    deliberate.  So I think that's the instruction that needs to

6    be given under the current law.  There is a case out there

7    from the Supreme Court called *Kingsley v. Henderson*, but the

8    Ninth Circuit hasn't addressed that.  It may apply in the

9    objective standard, but I think at this point,

10   the Ninth Circuit law is probably still good.

11          So I think that the instruction will probably need

12   to be two parts.  First of all, the jury has to decide there

13   was time for actual deliberation.  If so, then the standard

14   will be deliberate indifference, and if not, the standard

15   would be purpose to harm standard.

16          THE COURT:  In some cases that I've tried where

17   this issue has come up, I've resolved that at say, for

18   example, a summary judgment stage.  And it -- I do like to

19   pre-instruct the jury on the substantive law, but I have to

20   consider carefully whether I would give an instruction on

21   this point, because it may be that after I listen to the

22   evidence as to the manner in which these events occurred, I

23   may -- and I've done this before in other trials -- is decide

24   at that point which version -- which standard applies is a

25   better way to say it.

```
 1           MR FATTAHI:  I think there are cases where that
 2   decision could be taken away from the jury because no
 3   reasonable jury could find one way or the other.
 4           THE COURT:  It's a 50(a) standard, essentially.
 5           MR FATTAHI:  Correct.  And -- and frankly, that's
 6   an issue if the defendants believe they had an argument for
 7   it, it should have been raised on summary judgment; but I
 8   think in this case, that issue is going to have to go to the
 9   jury, depending on whether you believe the officers or some
10   of the other witnesses and other evidence in the case, I
11   think it's -- a jury could easily conclude that there's
12   deliberate indifference, and particularly, because here, you
13   have at least one of the officers reloading three separate
14   magazines.  And there are pauses between the shots.  And it
15   seems like even if there was no time to deliberate between
16   the first round of shots, maybe between the second -- before
17   the second or the third or the fourth round, then there would
18   been time for deliberation.  So I think the jury is going to
19   have to decide that.  And it may apply to different standards
20   to different parts of the shooting even.
21           THE COURT:  Probably the safest thing to do in
22   terms of the pre-instructions, that is the instructions at
23   the outset of the case, is to instruct the jury that they
24   would have to make that finding and leave he that open.  And
25   then if it becomes the case later on after the plaintiffs
```

```
 1    rest on the liability phase -- and I feel that one way or the
 2    other, no reasonable jury could find that there was time to
 3    deliberate, then I'll make that ruling then.  And the jury is
 4    has always told it's the final instructions that apply when
 5    you're deliberating.
 6             MR FATTAHI:  I think that would be appropriate in
 7    this case.
 8             THE COURT:  All right.  Then that's the way we'll
 9    handle that.  All right.  Any other issues -- now, you had a
10    settlement conference before Judge Gandhi.  And he indicated
11    to me without telling me the details that -- just said that
12    he was willing to meet with you again.  Are the parties
13    willing to -- or do you think it would be useful to have
14    another session with Judge Gandhi this week?
15             MR. DUNN:  I don't, Your Honor.
16             THE COURT:  What's your feeling?  You think you're
17    too far apart?
18             MR. RUSSELL:  I think we are, Your Honor.  I mean,
19    given where we -- where we were at the conclusion of the last
20    settlement conference, we were six figures apart which in a
21    case like this, may not seem like a lot, but I think given
22    our client's positions, it may be something where there is
23    not movement possible.
24             THE COURT:  All right.  Let me just say this:  If
25    you're going to discuss amongst yourselves or go to
```

```
 1    Judge Gandhi, that's fine; but I would need to know by
 2    Friday of this week if there's a resolution of the case -- I
 3    mean, a firm -- of course, it's something that's going to
 4    have to be approved by the City, I understand that; but I
 5    need to be able to tell the jury room that we won't need a
 6    panel.  Don't come in on Tuesday and tell me you've settled
 7    the case -- or if you do, I can't stop you from doing that,
 8    but I'll impose sanctions in terms of the costs of assembling
 9    the jury panel.
10            All right.  So unless I hear from you, we'll see
11    you next Tuesday morning at 8:30.
12            MR. DUNN:  Thank you, Your Honor.
13            THE COURT:  Thank you very much.
14            (Whereupon proceedings adjourned.)
15                       - - -
16
17
18
19
20
21
22
23
24
25
```

```
 1                    C E R T I F I C A T E

 2

 3

 4

 5      TREVOR WOODS, et al.              :

 6                 vs.                    :   No. CV 14-08374-VAP

 7      JOHN B. FAGAN, et al.             :

 8

 9

10   I, MARIA BUSTILLOS, OFFICIAL COURT REPORTER, IN AND FOR THE

11   UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF

12   CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753,

13   TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE AND

14   CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED

15   PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE

16   TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS

17   OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

18   FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE

19   REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE

20   REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

21

22   /S/_____         08/04/2016

23   MARIA R. BUSTILLOS                DATE
     OFFICIAL REPORTER
24

25
```

**'**

**'92** [1] - 15:2
**'94** [1] - 15:3

**/**

**/S** [1] - 36:22

**0**

**08/04/2016** [1] - 36:22

**1**

**1010** [1] - 2:6
**11TH** [1] - 2:16
**12254** [1] - 1:22
**14-08374-VAP** [3] - 1:10, 4:4, 36:6
**14th** [4] - 20:1, 30:23, 31:20, 31:25
**16th** [2] - 5:5, 6:3
**17th** [2] - 4:25, 6:3
**1994** [1] - 14:12
**1995** [3] - 14:12, 14:24, 15:5
**1999** [4] - 14:12, 14:25, 15:6, 15:18

**2**

**20** [1] - 12:13
**2000** [4] - 15:18, 15:20, 16:4, 16:5
**2001** [1] - 16:6
**2002** [1] - 16:8
**2003** [1] - 14:4
**2007** [1] - 17:4
**2009** [3] - 14:1, 17:2, 17:13
**2012** [2] - 17:10, 30:14
**2013** [1] - 30:14
**2016** [1] - 4:1
**2030** [1] - 17:10
**2040** [1] - 17:11
**20th** [1] - 6:4
**213** [1] - 1:24
**21st** [1] - 6:5
**28** [1] - 36:13
**2:31** [1] - 4:3

**3**

**312** [1] - 1:23
**323)435-8205** [1] - 2:7
**333** [1] - 2:16

**4**

**4** [1] - 3:2

**403** [1] - 29:2
**404** [1] - 1:23
**404(b** [2] - 18:1
**404(b)** [1] - 20:18
**4929** [1] - 2:6

**5**

**50(a** [3] - 31:10, 31:21, 33:4
**500** [1] - 2:10
**535** [1] - 2:10
**562)570-2200** [1] - 2:17

**6**

**6** [1] - 4:1
**6,2016** [1] - 1:18
**6th** [1] - 19:1

**7**

**753** [1] - 36:12

**8**

**818)839-1983** [1] - 2:11
**87** [1] - 22:19
**894-2739** [1] - 1:24
**8:30** [1] - 35:11

**9**

**90010** [2] - 2:7, 2:11
**90012** [1] - 1:24
**90802** [1] - 2:17

**A**

**able** [7] - 10:23, 14:14, 15:11, 16:21, 17:23, 30:1, 35:5
**ABOVE** [1] - 36:15
**ABOVE-ENTITLED** [1] - 36:15
**absent** [1] - 31:7
**accept** [1] - 29:1
**accommodate** [2] - 8:11, 8:21
**acts** [1] - 19:22
**actual** [1] - 32:13
**address** [2] - 14:14, 30:21
**addressed** [2] - 19:20, 32:8
**adjourned** [1] - 35:14
**administrative** [10] - 24:12, 24:19, 25:3, 25:23, 26:2, 26:4, 26:5, 26:19, 26:24,

27:6
**admissible** [2] - 13:19, 26:25
**admitted** [1] - 5:2
**admitting** [1] - 27:17
**advanced** [1] - 29:25
**adverse** [7] - 11:21, 21:19, 21:20, 22:17, 24:21, 26:15, 27:19
**affairs** [1] - 25:23
**afternoon** [4] - 4:10, 4:14, 5:10, 5:11
**agencies** [1] - 24:4
**agree** [2] - 7:1, 20:21
**agreement** [1] - 28:23
**ahead** [3] - 5:4, 11:10, 24:9
**al** [6] - 1:7, 1:12, 2:4, 2:14, 36:5, 36:7
**allow** [6] - 13:12, 22:5, 22:11, 23:11, 23:15, 27:24
**allowed** [3] - 8:6, 14:2, 19:23
**allows** [2] - 13:25, 18:3
**alter** [1] - 13:11
**amendment** [5] - 20:1, 21:3, 30:23, 31:20, 31:25
**amount** [1] - 6:22
**AND** [3] - 36:10, 36:13, 36:15
**AND/OR** [1] - 36:19
**ANGELES** [4] - 1:17, 1:24, 2:7, 4:1
**anticipate** [1] - 15:8
**ANY** [1] - 36:18
**apart** [2] - 34:17, 34:20
**apartment** [1] - 16:12
**appearance** [1] - 4:6
**applicable** [1] - 13:1
**applies** [1] - 32:24
**apply** [3] - 32:8, 33:19, 34:4
**appropriate** [6] - 11:13, 11:23, 13:3, 16:15, 27:20, 34:6
**approved** [1] - 35:4
**ARE** [1] - 36:19
**area** [1] - 7:16
**argue** [1] - 11:25
**argument** [4] - 11:18, 23:25, 27:9, 33:6
**arrested** [3] - 16:9, 16:12, 17:5
**assembling** [1] - 35:8
**assume** [5] - 5:15, 5:18, 20:13, 25:15, 26:22
**assuming** [1] - 5:10
**AT** [1] - 4:3
**attached** [1] - 22:2
**ATTORNEY'S** [1] -

2:14
**audio** [2] - 24:1, 26:12
**audio-recorded** [1] - 26:12
**audiotape** [1] - 24:4
**audiotaped** [1] - 25:4
**available** [1] - 22:15
**aware** [2] - 7:10, 26:11

**B**

**backed** [1] - 18:20
**bank** [2] - 17:5, 17:20
**based** [1] - 12:10
**basis** [3] - 12:14, 13:15, 24:21
**BEACH** [2] - 2:14, 2:17
**Beach** [4] - 4:5, 19:24, 24:2, 24:24
**becomes** [1] - 33:25
**begin** [1] - 10:25
**beginning** [1] - 23:21
**BEHALF** [2] - 2:4, 2:13
**behalf** [2] - 4:8, 4:11
**believes** [1] - 31:19
**better** [1] - 32:25
**between** [5] - 8:18, 17:7, 33:14, 33:15, 33:16
**beyond** [3] - 5:5, 28:24, 29:24
**bit** [2] - 12:20, 29:15
**born** [2] - 14:12, 15:2
**BOULEVARD** [3] - 2:6, 2:10, 2:16
**BRAND** [1] - 2:10
**BRIAN** [1] - 2:5
**Brian** [1] - 4:8
**brief** [2] - 6:23, 18:17
**briefly** [1] - 7:9
**bring** [3] - 7:8, 7:25, 8:1
**broad** [1] - 25:21
**brought** [3] - 8:2, 8:10, 9:14
**building** [1] - 7:16
**burglar** [1] - 17:17
**burglary** [1] - 16:18
**BUSTILLOS** [3] - 1:21, 36:10, 36:23
**but..** [1] - 29:16
**BY** [3] - 2:5, 2:9, 2:15
**bystander** [1] - 21:9

**C**

**C.S.R** [1] - 1:22
**calendar** [1] - 4:17
**CALIFORNIA** [9] - 1:2, 1:17, 1:24, 2:5, 2:7, 2:11, 2:17, 4:1, 36:12
**California** [3] - 7:20,

12:12, 15:8
**carefully** [1] - 32:20
**case** [40] - 5:7, 5:13, 5:16, 5:17, 5:19, 5:21, 6:19, 6:21, 7:4, 8:23, 9:12, 9:14, 9:24, 18:11, 18:21, 19:9, 19:21, 19:25, 21:6, 21:23, 23:6, 23:21, 24:19, 25:2, 26:2, 30:10, 30:11, 30:22, 30:23, 32:6, 33:8, 33:10, 33:23, 33:25, 34:7, 34:21, 35:2, 35:7
**cases** [4] - 18:7, 19:23, 32:16, 33:1
**caught** [1] - 16:25
**caveat** [1] - 14:4
**CENTRAL** [2] - 1:2, 36:11
**certain** [2] - 12:10, 23:1
**certainly** [1] - 9:19
**CERTIFY** [1] - 36:12
**cetera** [1] - 13:14
**change** [2] - 8:12, 28:21
**changes** [5] - 22:14, 23:1, 23:2, 23:4, 23:6
**channel** [1] - 29:7
**character** [1] - 18:6
**charge** [1] - 25:9
**CHARGED** [1] - 36:18
**charges** [1] - 18:9
**chef** [1] - 9:14
**chief** [2] - 5:8, 9:12
**child** [1] - 21:3
**Chino** [2] - 7:21, 7:25
**circle** [1] - 16:15
**CIRCUIT** [1] - 36:18
**Circuit** [5] - 6:4, 30:23, 31:24, 32:8, 32:10
**circumstances** [1] - 31:13
**CITY** [1] - 2:14
**City** [4] - 4:5, 20:3, 20:23, 35:4
**claim** [7] - 19:25, 20:1, 21:3, 21:4, 28:15, 31:20
**clarify** [1] - 19:12
**clear** [3] - 15:19, 15:23, 31:15
**clearly** [1] - 25:24
**CLERK** [1] - 4:4
**client's** [1] - 34:22
**clients** [4] - 7:10, 9:20, 10:2, 10:9
**clothes** [3] - 8:7, 8:8, 8:11
**clothing** [1] - 11:11
**COCHRAN** [1] - 2:4
**CODE** [1] - 36:13

**comment** [2] - 11:24, 16:14
**computer** [1] - 22:1
**conceivably** [1] - 27:3
**conclude** [1] - 33:11
**conclusion** [2] - 26:24, 34:19
**conclusions** [3] - 12:25, 13:7, 13:14
**conduct** [1] - 31:12
**conference** [5] - 4:17, 11:21, 12:4, 34:10, 34:20
**CONFERENCE** [4] - 1:16, 3:12, 36:17, 36:20
**CONFORMANCE** [2] - 36:16, 36:19
**conscience** [3] - 31:6, 31:8, 31:14
**consider** [3] - 19:13, 30:16, 32:20
**consideration** [1] - 18:17
**contact** [1] - 11:10
**contained** [2] - 13:2, 13:8
**continue** [1] - 6:7
**continuum** [1] - 17:6
**contrary** [1] - 24:3
**convict** [1] - 17:12
**convicted** [9] - 14:1, 14:4, 16:9, 16:18, 16:24, 17:1, 17:13, 17:14, 18:10
**conviction** [1] - 14:2
**convictions** [5] - 16:16, 16:21, 17:9, 18:11, 18:20
**Corporal** [2] - 4:15, 30:24
**CORRECT** [1] - 36:14
**correct** [5] - 18:5, 20:4, 25:14, 26:3, 33:5
**costs** [1] - 35:8
**counsel** [3] - 4:6, 8:6, 25:7
**counsel's** [1] - 24:24
**couple** [1] - 5:20
**course** [4] - 6:18, 9:23, 29:10, 35:3
**COURT** [99] - 1:1, 1:21, 4:3, 4:13, 4:16, 4:22, 5:6, 5:12, 5:22, 6:11, 6:15, 6:18, 6:25, 7:2, 7:18, 7:22, 8:9, 8:17, 8:21, 9:2, 9:10, 9:13, 9:16, 9:22, 10:10, 10:15, 11:4, 11:9, 11:13, 11:25, 12:2, 12:19, 13:9, 13:20, 13:23, 14:5, 14:17, 14:20, 15:1, 15:4, 15:14, 15:17, 15:22, 16:1,

16:4, 16:7, 17:3, 17:12, 17:16, 17:25, 18:7, 18:19, 18:25, 19:5, 19:8, 19:15, 19:18, 20:3, 20:5, 20:8, 20:12, 20:19, 20:24, 21:9, 21:12, 21:15, 21:18, 22:18, 22:20, 23:14, 24:9, 24:23, 25:12, 25:18, 25:25, 26:5, 26:10, 26:21, 27:12, 27:14, 28:3, 28:10, 29:5, 29:10, 29:19, 30:3, 30:6, 30:18, 31:17, 31:23, 32:16, 33:4, 33:21, 34:8, 34:16, 34:24, 35:13, 36:10, 36:11
**Court** [24] - 4:25, 7:10, 9:18, 10:5, 10:6, 10:7, 11:16, 12:9, 13:17, 13:25, 14:11, 18:14, 19:22, 21:2, 26:18, 28:7, 28:21, 28:25, 30:20, 31:9, 31:15, 31:19, 32:7
**court** [1] - 8:3
**Court's** [14] - 4:17, 4:24, 7:11, 11:18, 11:19, 12:6, 13:24, 18:17, 22:6, 24:3, 26:14, 26:15, 29:1, 30:15
**COURTHOUSE** [1] - 1:22
**courtroom** [4] - 8:15, 9:4, 10:3, 27:5
**covered** [2] - 25:24, 30:4
**Cox** [1] - 22:3
**credibility** [2] - 16:20, 18:22
**crime** [2] - 16:22, 18:3
**crimes** [4] - 16:17, 17:2, 17:7, 17:14
**criminal** [2] - 8:23, 13:18
**current** [1] - 32:6
**custody** [5] - 7:18, 8:14, 14:9, 17:7
**cut** [1] - 28:8
**CV** [3] - 1:10, 4:4, 36:6

**D**

**dad** [1] - 14:22
**damages** [11] - 5:4, 6:23, 7:13, 13:21, 13:22, 13:23, 14:7, 14:14, 20:15, 20:22, 29:21
**Daniel** [1] - 21:21
**dark** [2] - 5:1, 6:3
**DARRYL** [1] - 2:15

**DATE** [1] - 36:23
**Daubert** [1] - 12:21
**days** [3] - 6:8, 6:9, 7:5
**deadline** [1] - 28:24
**dealing** [1] - 11:4
**decedent** [3] - 14:12, 15:2, 15:10
**decedent's** [2] - 21:1, 21:3
**decide** [3] - 32:12, 32:23, 33:19
**decision** [1] - 33:2
**decisions** [1] - 13:1
**declaration** [1] - 22:2
**defendant** [3] - 5:17, 16:20, 20:14
**Defendants** [1] - 1:13
**DEFENDANTS** [1] - 2:13
**defendants** [4] - 11:22, 13:25, 20:11, 33:6
**Defense** [13] - 4:23, 5:16, 5:19, 5:20, 6:2, 12:7, 19:21, 20:25, 21:23, 22:11, 28:2, 28:13, 30:22
**defer** [2] - 23:14, 23:20
**deliberate** [7] - 19:11, 32:1, 32:5, 32:14, 33:12, 33:15, 34:3
**deliberating** [2] - 10:25, 34:5
**deliberation** [2] - 32:13, 33:18
**deliberations** [1] - 7:3
**denied** [2] - 19:22, 21:2
**department** [2] - 23:17, 24:16
**Department** [1] - 19:24
**department's** [1] - 23:18
**Department's** [1] - 24:2
**deposed** [1] - 12:8
**DEPOSIT** [1] - 36:19
**deposition** [8] - 12:12, 12:18, 15:19, 22:14, 24:12, 26:4, 26:14, 27:15
**depositions** [1] - 26:2
**destroyed** [1] - 23:5
**details** [3] - 6:15, 16:22, 34:11
**detective** [1] - 23:1
**develops** [1] - 23:22
**different** [13] - 7:24, 11:6, 11:8, 11:16, 17:5, 25:4, 26:19, 26:21, 27:1, 27:4, 31:14, 33:19, 33:20
**dire** [2] - 9:24, 10:1

**disciplinary** [1] - 26:7
**discoverable** [3] - 27:2, 27:7, 28:15
**discovery** [7] - 12:3, 12:5, 25:2, 25:16, 25:19, 28:8, 28:11, 28:24, 29:15
**discrepancy** [1] - 25:5
**discuss** [2] - 19:23, 34:25
**discussed** [1] - 7:22
**discussion** [2] - 12:25, 31:5
**dishonesty** [2] - 16:17, 18:4
**displayed** [1] - 28:1
**disputed** [1] - 31:4
**DISTRICT** [5] - 1:1, 1:2, 1:5, 36:11
**DIVISION** [1] - 1:3
**DO** [1] - 36:12
**document** [3] - 22:19, 23:4, 23:7
**documents** [1] - 26:8
**domain** [2] - 12:13, 12:14
**done** [6] - 5:5, 5:11, 5:21, 12:4, 24:16, 32:23
**door** [3] - 8:18, 8:19, 29:14
**draconian** [1] - 16:25
**draft** [2] - 21:25, 22:24
**draw** [2] - 23:11, 27:25
**driven** [1] - 7:17
**drug** [1] - 16:24
**Dunn** [2] - 22:22, 23:23
**DUNN** [28] - 2:5, 4:7, 4:21, 5:9, 6:24, 7:1, 7:9, 7:19, 7:24, 8:16, 8:20, 9:1, 9:7, 9:11, 9:15, 9:17, 10:5, 10:14, 11:3, 11:6, 11:12, 12:23, 19:6, 19:12, 19:17, 21:17, 34:15, 35:12
**Dunn...** [1] - 19:5
**during** [15] - 8:22, 9:11, 9:14, 9:23, 10:1, 12:11, 15:12, 15:19, 16:13, 24:13, 25:2, 26:1, 27:1, 31:2, 31:19
**duty** [1] - 23:10

**E**

**easily** [1] - 33:11
**eight** [1] - 7:5
**either** [3] - 7:7, 23:2, 32:1
**electronic** [1] - 16:11
**enable** [1] - 23:6
**end** [2] - 10:18, 19:1

**enforcement** [3] - 10:12, 31:1, 31:7
**enters** [1] - 9:4
**entirely** [1] - 25:3
**ENTITLED** [1] - 36:15
**ESI** [1] - 22:16
**especially** [2] - 18:15, 21:6
**ESQ** [3] - 2:5, 2:9, 2:15
**essentially** [3] - 7:25, 16:10, 33:4
**estimate** [2] - 5:7, 7:6
**et** [7] - 1:7, 1:12, 2:4, 2:14, 13:14, 36:5, 36:7
**event** [2] - 23:21, 28:1
**events** [4] - 23:13, 27:5, 28:4, 32:22
**everyday** [1] - 7:17
**evidence** [26] - 14:1, 14:3, 18:1, 18:2, 19:22, 20:5, 20:14, 20:17, 20:18, 21:1, 21:5, 22:5, 22:7, 23:10, 23:22, 24:8, 28:16, 29:2, 30:17, 31:1, 31:11, 31:22, 32:22, 33:10
**evidence...** [1] - 30:22
**exact** [1] - 25:19
**exactly** [3] - 18:9, 18:20, 27:10
**example** [5] - 8:5, 12:7, 16:18, 19:21, 32:18
**excessive** [1] - 19:24
**exclude** [5] - 19:21, 21:1, 25:17, 27:10
**excluded** [2] - 12:9, 26:18
**excluding** [1] - 7:3
**excuse** [2] - 6:2, 18:11
**exist** [4] - 21:25, 22:6, 24:8, 28:16
**existed** [1] - 24:8
**existence** [1] - 22:9
**exists** [3] - 21:5, 22:7, 27:11
**expect** [3] - 6:14, 28:9, 28:21
**experience** [2] - 21:7, 24:3
**expert** [3] - 5:19, 12:8, 13:3
**explain** [2] - 10:2, 14:2
**extended** [1] - 11:18
**extent** [2] - 12:9, 13:13
**extra** [1] - 9:5

**F**

**fact** [2] - 10:9, 30:11
**FAGAN** [3] - 1:12,

2:14, 36:7
**Fagan** [4] - 4:15, 24:1, 24:10, 30:24
**fair** [1] - 7:5
**false** [1] - 16:19
**far** [2] - 7:21, 34:17
**FATTAHI** [14] - 2:9, 2:9, 4:10, 20:10, 20:21, 22:23, 24:10, 25:21, 26:3, 26:7, 31:24, 33:1, 33:5, 34:6
**Fattahi** [6] - 4:11, 12:8, 22:21, 24:9, 28:23, 31:23
**feasible** [1] - 5:25
**federal** [3] - 13:1, 17:7, 17:20
**FEE** [1] - 36:18
**feelings** [1] - 10:11
**FEES** [1] - 36:18
**felony** [5] - 14:1, 14:2, 14:4, 16:16, 16:21
**figure** [1] - 8:25
**figures** [1] - 34:20
**file** [2] - 19:1, 27:11
**final** [1] - 34:4
**finalize** [1] - 30:21
**finalized** [2] - 21:25, 22:10
**finally** [1] - 17:8
**fine** [6] - 5:6, 6:5, 6:6, 6:10, 6:11, 35:1
**finish** [1] - 6:2
**finished** [1] - 17:21
**finishing** [1] - 17:19
**firm** [1] - 35:3
**FIRM** [1] - 2:4
**first** [9] - 6:8, 7:15, 9:2, 18:8, 21:20, 22:16, 32:12, 33:16
**five** [2] - 29:18
**FLOOR** [1] - 2:16
**follow** [1] - 10:15
**follow-up** [1] - 10:15
**following** [1] - 6:12
**Fonzi** [4] - 12:7, 12:11, 12:23
**footage** [1] - 27:24
**FOR** [3] - 36:10, 36:11, 36:18
**force** [2] - 12:14, 19:24
**FOREGOING** [1] - 36:13
**foreseeable** [1] - 23:9
**FORMAT** [1] - 36:16
**forth** [1] - 7:17
**foundation** [2] - 12:18, 13:4
**four** [4] - 14:17, 14:19, 15:13, 29:6
**four-year** [2] - 14:19, 15:13
**fourth** [3] - 17:6, 21:3,

33:17
**frame** [1] - 16:14
**frankly** [1] - 33:5
**Friday** [2] - 4:25, 35:2
**front** [3] - 22:20, 23:16, 29:14
**fugitive** [1] - 17:3

**G**

**Galipo** [1] - 12:8
**Gandhi** [3] - 34:10, 34:14, 35:1
**gathered** [1] - 30:9
**generally** [1] - 25:8
**given** [8] - 22:25, 26:22, 26:23, 27:3, 30:23, 32:6, 34:19, 34:21
**GLENDALE** [1] - 2:11
**great** [1] - 30:12
**grounds** [1] - 29:2
**guess** [1] - 28:10
**guidelines** [1] - 12:12

**H**

**habit** [1] - 20:17
**half** [1] - 6:25
**halfway** [2] - 15:8, 15:15
**handle** [1] - 34:9
**hands** [2] - 8:21, 8:22
**harm** [6] - 30:25, 31:6, 31:7, 31:10, 32:1, 32:15
**head** [1] - 26:13
**hear** [1] - 35:10
**HEARING** [2] - 1:16, 3:2
**hearing** [6] - 12:21, 26:2, 26:17, 26:19, 26:24, 27:6
**HELD** [1] - 36:15
**helpful** [1] - 23:13
**Henderson** [1] - 32:7
**HEREBY** [1] - 36:12
**hidden** [1] - 22:13
**hide** [1] - 14:9
**history** [1] - 13:18
**homicide** [3] - 22:3, 25:8, 25:23
**Honor** [37] - 4:7, 4:10, 4:14, 4:21, 4:23, 5:15, 6:10, 6:13, 7:1, 7:9, 10:14, 11:7, 11:12, 11:15, 12:5, 13:16, 13:22, 14:10, 18:13, 18:24, 19:4, 19:16, 19:19, 20:13, 20:25, 21:17, 23:24, 25:8, 26:11, 27:8, 27:22, 28:20, 29:17, 30:20, 34:15, 34:18,

35:12
**HONORABLE** [1] - 1:5
**hospital** [1] - 5:2
**house** [2] - 15:8, 15:15
**HOWARD** [1] - 2:15
**Howard** [1] - 4:14

**I**

**imagine** [1] - 9:18
**immediately** [1] - 25:14
**impeach** [2] - 18:3, 27:4
**impeachment** [1] - 18:12
**important** [1] - 31:9
**impose** [1] - 35:8
**impression** [1] - 16:23
**imprisonment** [1] - 16:19
**IN** [5] - 4:3, 36:10, 36:15, 36:16, 36:19
**incarcerated** [10] - 7:11, 9:20, 10:12, 14:13, 14:15, 14:23, 15:6, 15:11, 16:3, 17:10
**incarceration** [1] - 17:24
**incident** [4] - 16:9, 16:10, 21:22, 24:13
**inclined** [1] - 31:15
**including** [1] - 25:22
**indicate** [1] - 26:17
**indicated** [1] - 34:10
**indifference** [2] - 32:14, 33:12
**indifferent** [1] - 32:2
**indulgence** [1] - 4:24
**infer** [1] - 22:12
**inference** [9] - 11:22, 21:20, 22:17, 23:12, 24:22, 26:15, 27:19, 27:25, 29:12
**information** [2] - 13:18, 18:9
**informed** [1] - 18:22
**inquiry** [1] - 29:14
**instruct** [2] - 32:19, 33:23
**instructed** [1] - 23:1
**instruction** [14] - 11:22, 21:19, 21:20, 22:17, 23:11, 23:20, 24:22, 26:16, 27:19, 31:17, 31:19, 32:5, 32:11, 32:20
**instructions** [5] - 30:21, 31:4, 33:22, 34:4
**insufficient** [1] - 12:10
**intent** [4] - 30:25, 31:6, 31:7, 31:10

**interaction** [1] - 31:2
**internal** [1] - 25:23
**internally** [1] - 24:17
**interrupt** [2] - 15:1, 25:18
**interview** [4] - 24:25, 25:1, 25:10, 25:13
**introduce** [6] - 13:25, 14:3, 14:22, 18:1, 18:2, 20:19
**investigating** [1] - 24:17
**investigation** [2] - 25:10, 25:23
**investigations** [1] - 22:4
**investigators** [1] - 25:9
**involved** [6] - 16:17, 22:4, 24:5, 24:25, 25:9
**involving** [1] - 18:4, 19:23
**IS** [2] - 36:13, 36:16
**issue** [11] - 13:17, 14:10, 16:20, 18:6, 19:20, 22:23, 23:23, 30:19, 32:17, 33:6, 33:8
**issued** [1] - 28:25
**issues** [4] - 7:7, 11:14, 12:1, 34:9
**item** [4] - 4:4, 22:16, 22:21, 23:15
**items** [1] - 21:22
**itself** [1] - 27:14

**J**

**JOHN** [5] - 1:12, 2:9, 2:9, 2:14, 36:7
**John** [1] - 4:11
**Judge** [3] - 34:10, 34:14, 35:1
**JUDGE** [1] - 1:5
**judgment** [2] - 32:18, 33:7
**JUDICIAL** [2] - 36:17, 36:20
**JUNE** [2] - 1:18, 4:1
**June** [1] - 4:25
**jurisdiction** [1] - 17:5
**juror** [1] - 10:9
**jury** [43] - 5:4, 5:10, 5:23, 6:7, 6:19, 8:24, 9:4, 9:5, 9:18, 9:19, 9:24, 10:8, 10:17, 10:19, 10:24, 15:11, 16:23, 17:23, 18:21, 19:10, 22:12, 23:11, 23:16, 27:25, 29:14, 30:21, 31:9, 32:3, 32:12, 32:19, 33:2, 33:3, 33:9, 33:11, 33:18, 33:23, 34:2,

34:3, 35:5, 35:9

**K**

**keep** [1] - 22:10
**keeping** [1] - 23:19
**kept** [1] - 22:1
**kidnapping** [4] - 16:11, 16:18, 17:16
**kidnapping/robbery** [1] - 17:17
**kind** [3] - 5:25, 8:3, 26:5
**kinds** [1] - 10:10
**Kingsley** [1] - 32:7

**L**

**last** [5] - 11:7, 11:17, 11:20, 12:4, 34:19
**latest** [1] - 19:11
**LAW** [1] - 2:9
**law** [12] - 10:12, 13:1, 18:11, 18:21, 30:23, 31:1, 31:7, 31:24, 32:6, 32:10, 32:19
**lay** [1] - 13:4
**learned** [1] - 26:3
**learning** [2] - 12:13, 12:14
**least** [3] - 15:11, 26:16, 33:13
**leave** [2] - 16:23, 33:24
**legal** [3] - 12:25, 13:7, 13:14
**legitimate** [2] - 28:15, 31:1
**LESS** [1] - 36:18
**less** [2] - 7:5, 31:3
**letting** [1] - 5:6
**liability** [10] - 5:11, 7:12, 9:8, 9:17, 9:21, 13:20, 20:16, 20:20, 31:20, 34:1
**liable** [1] - 30:24
**Lieutenant** [1] - 22:3
**lieutenant** [1] - 22:3
**light** [1] - 13:10
**limine** [4] - 11:20, 12:7, 13:12, 21:1
**list** [1] - 10:5
**listed** [1] - 21:22
**listen** [1] - 32:21
**litigation** [1] - 23:8
**lockup** [1] - 7:15
**LONG** [2] - 2:14, 2:17
**look** [2] - 17:6, 27:11
**looking** [2] - 29:23, 31:10
**looks** [1] - 5:25
**LOS** [4] - 1:17, 1:24, 2:7, 4:1

# M

magazines [1] - 33:14
main [1] - 5:17
maintain [2] - 13:7, 15:9
maintained [1] - 22:1
manager [1] - 16:11
manager's [1] - 16:12
manner [2] - 28:11, 32:22
MARIA [3] - 1:21, 36:10, 36:23
marshal's [3] - 8:10, 8:17, 11:5
marshals [4] - 7:23, 8:4, 8:11, 10:25
Martinez [5] - 4:15, 22:25, 24:2, 24:11, 30:24
Martinez's [2] - 21:21, 22:12
materials [6] - 28:24, 28:25, 29:23, 29:24, 30:4, 30:14
MATTER [1] - 36:15
matter [3] - 4:16, 4:19, 24:16
mean [11] - 6:13, 7:14, 14:8, 15:22, 21:12, 23:20, 25:3, 29:11, 30:3, 34:18, 35:3
meet [1] - 34:12
mentioned [1] - 19:15
messy [1] - 29:15
methodology [1] - 12:11
middle [3] - 6:9, 19:2, 19:7
minute [2] - 28:3, 31:3
misunderstanding [1] - 25:6
MONDAY [2] - 1:18, 4:1
Mondays [1] - 5:25
Monell [1] - 19:25
months [1] - 15:16
moot [1] - 29:19
morning [3] - 4:7, 9:3, 35:11
most [1] - 6:25
motion [7] - 13:12, 21:2, 25:7, 27:14, 28:7, 31:10, 31:21
motions [2] - 11:19, 12:6
mouth [1] - 9:19
move [1] - 19:9
moved [4] - 7:19, 7:20, 19:21, 20:25
movement [1] - 34:23
moving [2] - 25:16, 25:17
MR [95] - 4:7, 4:10, 4:14, 4:21, 4:23, 5:9,

# N

names [1] - 10:2
near [1] - 8:18
necessarily [2] - 13:5, 23:16
necessary [1] - 9:4
need [12] - 6:15, 9:17, 10:25, 11:1, 18:19, 18:25, 19:1, 19:9, 32:11, 35:1, 35:5
needed [1] - 7:13
needs [1] - 32:5
never [4] - 10:21, 22:9, 23:7, 24:8
next [8] - 4:19, 6:9, 13:16, 18:16, 19:2, 19:7, 19:11, 35:11
Ninth [4] - 30:23, 31:24, 32:8, 32:10
none [1] - 27:24
nonviolent [1] - 16:24
normally [1] - 5:24
NORTH [2] - 1:23, 2:10
notice [1] - 11:2
notify [1] - 10:25
number [11] - 12:13, 22:19, 22:21, 23:25, 27:2, 27:23, 29:6, 29:18, 29:21
NW [1] - 21:3

# O

oath [2] - 26:22, 27:3
object [2] - 22:17, 27:21
objecting [1] - 29:2
objection [7] - 11:23, 12:15, 20:8, 22:2, 29:4, 29:6, 29:9
objectionable [1] - 13:6
objections [2] - 13:7, 21:23
objective [1] - 32:9
obviously [2] - 7:12, 23:8
occurred [2] - 27:5, 32:22
OCEAN [1] - 2:16
OF [11] - 1:2, 1:15, 2:4, 2:9, 2:13, 36:11, 36:14, 36:17, 36:20
offense [1] - 16:24
offer [1] - 18:7
offered [1] - 20:6
OFFICE [1] - 2:14
officer [13] - 8:15, 22:4, 23:3, 24:5, 24:7, 24:20, 24:25, 25:9, 26:9, 26:13, 27:16, 29:25
Officer [9] - 4:15, 21:21, 22:12, 22:25, 24:1, 24:2, 24:10, 24:11, 30:24
officer's [2] - 23:13, 27:15
officer-involved [4] - 22:4, 24:5, 24:25, 25:9
officers [15] - 5:17, 5:20, 10:1, 20:10, 20:15, 21:23, 24:5, 25:1, 25:11, 26:1, 27:4, 30:1, 32:4, 33:9, 33:13
OFFICES [1] - 2:9
OFFICIAL [3] - 1:21, 36:10, 36:23
ON [2] - 2:4, 2:13
once [2] - 18:5, 28:22
one [20] - 6:19, 6:21, 8:2, 14:13, 16:5, 16:14, 17:23, 21:22, 22:8, 22:21, 25:1, 26:1, 27:2, 29:7, 31:11, 32:3, 33:3, 33:13, 34:1
one-year [1] - 16:5
ongoing [1] - 4:24
open [2] - 9:19, 33:24
opening [2] - 19:13, 29:14
openings [1] - 19:16
opinion [3] - 12:18,
12:21, 13:3
opinions [4] - 12:10, 12:22, 12:24, 13:4
opportunity [2] - 11:17, 18:18
opposed [2] - 20:15, 31:6
optimistic [1] - 10:19
order [3] - 13:12, 28:25, 30:24
original [6] - 21:21, 22:9, 22:23, 23:7, 23:12, 23:19
ostensibly [1] - 23:5
outset [1] - 33:23
outside [1] - 16:12
outstanding [1] - 4:18
oversees [1] - 22:3

# P

P.M [1] - 4:3
PAGE [2] - 3:2, 36:16
pain [2] - 21:1, 21:5
panel [4] - 5:23, 9:24, 35:6, 35:9
paragraph [1] - 27:20
paragraphs [1] - 27:21
parole [2] - 15:22, 15:24
part [4] - 15:6, 15:7, 15:15, 25:7
participated [1] - 17:15
particularly [2] - 12:13, 33:12
parties [3] - 4:19, 10:1, 34:12
parts [2] - 32:12, 33:20
party [1] - 20:3
pauses [1] - 33:14
people [2] - 11:6, 11:8
perhaps [1] - 13:11
period [8] - 14:19, 14:24, 14:25, 15:5, 15:13, 15:15, 16:2, 16:5
periods [2] - 14:21, 17:24
permitted [1] - 14:6
pertinent [1] - 28:1
phase [24] - 5:4, 5:11, 6:20, 6:21, 6:23, 7:12, 7:13, 9:8, 9:17, 9:21, 10:23, 13:20, 13:21, 13:22, 13:23, 14:14, 19:14, 20:15, 20:16, 20:20, 20:22, 29:21, 31:20, 34:1
PHILLIPS [1] - 1:5
physically [1] - 15:12
pick [1] - 5:10
piece [4] - 21:20, 22:5, 24:7, 28:16

place [3] - 21:4, 25:13, 29:8
plaintiff [3] - 27:10, 28:6, 31:5
plaintiff's [2] - 5:16, 12:15
plaintiffs [22] - 4:9, 4:12, 5:18, 6:2, 11:1, 11:21, 12:20, 13:11, 13:18, 14:8, 14:13, 18:17, 18:23, 19:2, 19:23, 20:1, 20:8, 21:7, 21:15, 28:5, 28:12, 33:25
Plaintiffs [1] - 2:4
PLAINTIFFS [1] - 2:4
planning [1] - 20:19
point [10] - 10:20, 26:17, 27:18, 28:7, 28:10, 29:21, 31:25, 32:9, 32:21, 32:24
police [1] - 24:6
Police [2] - 19:24, 24:2
policies [1] - 29:22, 29:24
policy [6] - 7:24, 8:10, 8:17, 23:19, 24:2, 24:16
position [2] - 13:11, 27:9
positions [2] - 24:24, 34:22
possibility [1] - 6:19
possible [2] - 10:24, 34:23
POST [4] - 12:12, 12:24, 13:5, 13:6
pre [2] - 32:19, 33:22
pre-instruct [1] - 32:19
pre-instructions [1] - 33:22
predict [1] - 7:4
prejudicial [1] - 10:8
present [4] - 10:3, 12:9, 15:12, 18:15
presentation [1] - 31:22
preserve [1] - 23:10
PRESIDING [1] - 1:5
presumption [2] - 30:1, 30:17
pretrial [3] - 4:17, 11:20, 12:4
PRETRIAL [2] - 1:16, 3:2
pretty [5] - 6:23, 10:18, 11:1, 30:13, 31:25
printed [2] - 22:24, 23:4
printed-out [1] - 23:4
prison [4] - 8:8, 15:7, 15:21, 15:25
privilege [1] - 28:16

41

**probation** [3] - 15:20, 15:24, 15:25
**problem** [2] - 23:3, 26:18
**procedurally** [1] - 7:14
**procedure** [1] - 7:11
**proceed** [3] - 4:20, 6:21, 31:21
**proceeding** [7] - 24:13, 24:20, 25:3, 26:4, 26:6, 26:8, 26:23
**proceedings** [1] - 35:14
**PROCEEDINGS** [2] - 1:15, 36:15
**produced** [2] - 23:5, 23:7
**proffered** [1] - 23:18
**prohibition** [1] - 13:13
**proper** [1] - 23:11
**properly** [1] - 28:15
**proposed** [1] - 11:21
**punishment** [1] - 16:25
**punitive** [3] - 20:15, 20:22, 29:20
**purpose** [4] - 31:1, 31:7, 32:1, 32:15
**PURSUANT** [1] - 36:12
**put** [5] - 9:2, 12:18, 29:4, 29:10, 29:12

**Q**

**question-by-question** [1] - 13:15
**questions** [4] - 10:6, 6:10, 10:10, 11:9, 16:21
**quickly** [4] - 10:21, 10:22, 19:9, 31:3
**quite** [1] - 5:25
**quote** [1] - 22:8
**quoted** [1] - 27:14

**R**

**raise** [2] - 11:16, 14:11
**raised** [1] - 33:7
**rap** [2] - 18:13, 18:20
**rather** [2] - 10:21, 10:22
**read** [1] - 10:2
**ready** [1] - 4:20
**real** [1] - 15:19
**really** [1] - 17:22
**reason** [1] - 20:2
**reasonable** [4] - 12:16, 12:17, 33:3, 34:2
**reasonably** [1] - 23:9
**rebut** [1] - 30:17
**rebuttable** [2] - 29:11,

29:25
**recess** [1] - 9:5
**record** [4] - 25:1, 25:10, 29:2, 29:4
**recorded** [9] - 24:1, 24:14, 24:18, 24:20, 25:19, 25:22, 26:12, 27:16, 27:23
**recording** [3] - 24:15, 27:17
**recordkeeping** [2] - 30:12, 30:13
**REDUCTION** [1] - 36:19
**reference** [1] - 22:5
**referring** [1] - 25:25
**refuse** [1] - 28:14
**regard** [1] - 7:11
**regarding** [7] - 11:11, 11:18, 11:19, 13:17, 20:10, 20:14, 21:21
**REGULATIONS** [2] - 36:16, 36:20
**relating** [1] - 26:8
**relationship** [1] - 33:13
**relevance** [1] - 20:23
**relevant** [6] - 12:6, 13:6, 20:17, 21:6, 28:4, 29:3
**reloading** [1] - 33:13
**relying** [1] - 12:12
**remaining** [2] - 4:8, 4:11
**remember** [1] - 30:10
**repeat** [1] - 9:22
**report** [14] - 13:2, 13:8, 21:21, 21:24, 21:25, 22:9, 22:10, 22:13, 22:24, 23:12, 23:19, 24:6, 24:18
**REPORTED** [1] - 36:14
**REPORTER** [3] - 1:21, 36:10, 36:23
**REPORTER'S** [1] - 1:15
**representation** [2] - 24:14, 28:12
**representing** [1] - 28:4
**request** [3] - 18:21, 19:22, 25:19
**required** [3] - 24:18, 29:15, 30:6
**resolution** [1] - 35:2
**resolved** [1] - 32:17
**respect** [1] - 18:11
**respective** [1] - 24:24
**respond** [2] - 18:23, 19:2
**response** [1] - 21:16
**rest** [1] - 34:1
**results** [1] - 26:19
**review** [1] - 18:14
**reviewed** [1] - 21:24

**revisit** [1] - 29:21
**robbery** [4] - 16:11, 16:18, 17:5, 17:20
**room** [1] - 35:5
**ROOM** [1] - 1:23
**roughly** [3] - 16:5, 16:8, 30:13
**round** [2] - 33:16, 33:17
**rule** [1] - 18:3
**Rule** [3] - 31:10, 31:21
**ruled** [1] - 26:25
**ruling** [16] - 11:18, 13:11, 13:17, 13:25, 14:6, 19:10, 22:6, 23:14, 26:14, 26:15, 28:7, 28:22, 29:1, 30:15, 34:3
**rulings** [2] - 12:6, 19:20
**run** [1] - 16:13
**RUSSELL** [57] - 2:15, 4:14, 4:23, 5:14, 6:10, 6:13, 6:16, 11:15, 12:1, 12:5, 13:16, 13:22, 13:24, 14:10, 14:18, 14:24, 15:3, 15:5, 15:16, 15:18, 15:23, 16:2, 16:5, 16:8, 17:4, 17:14, 17:18, 18:5, 18:13, 18:24, 19:4, 19:19, 20:4, 20:7, 20:13, 20:25, 21:11, 21:14, 21:19, 22:19, 23:24, 25:6, 25:15, 26:11, 27:8, 27:13, 27:22, 28:6, 28:20, 29:6, 29:17, 29:20, 30:5, 30:8, 30:19, 31:18, 34:18
**Russell** [3] - 4:15, 4:22, 11:14

**S**

**safest** [1] - 33:21
**sanctions** [1] - 35:8
**scheme** [1] - 16:25
**seated** [1] - 8:18
**second** [5] - 6:20, 10:20, 10:23, 33:16, 33:17
**SECTION** [1] - 36:12
**see** [8] - 8:24, 12:19, 18:25, 22:18, 23:22, 27:11, 35:10
**see..** [1] - 6:1
**seeking** [2] - 12:21, 25:7
**seem** [1] - 34:21
**sees** [1] - 30:22
**selecting** [1] - 5:23
**semantics** [1] - 31:8
**sent** [1] - 17:20

**sentence** [6] - 14:6, 17:9, 17:19, 17:20, 17:21, 17:22
**separate** [1] - 33:13
**serve** [1] - 17:21
**service** [1] - 11:5
**serving** [1] - 17:18
**SESSION** [1] - 4:3
**session** [2] - 6:8, 34:14
**set** [1] - 4:19
**settled** [1] - 35:6
**settlement** [2] - 34:10, 34:20
**several** [2] - 12:21, 16:13
**shackled** [1] - 8:25
**sheet** [1] - 18:20
**sheets** [1] - 18:13
**shock** [2] - 31:8, 31:13
**shocking** [1] - 31:6
**shooting** [9] - 24:6, 24:13, 24:16, 24:25, 25:10, 25:14, 27:24, 31:3, 33:20
**short** [2] - 11:1, 18:16
**shortcut** [1] - 12:20
**shortly** [1] - 16:5
**shots** [3] - 31:13, 33:14, 33:16
**show** [5] - 28:2, 28:4, 28:13, 29:3
**showing** [1] - 12:10
**shows** [1] - 27:24
**side** [1] - 7:7
**sides** [2] - 4:20, 10:11
**sitting** [1] - 9:11
**six** [3] - 15:16, 29:22, 34:20
**so..** [1] - 6:4
**someone** [2] - 10:12, 27:1
**sometimes** [1] - 17:10
**somewhere** [1] - 17:10
**son** [2] - 15:10, 15:12
**soon** [3] - 9:19, 10:24
**sorry** [3] - 13:20, 15:1, 15:4
**sort** [2] - 8:13, 19:8
**sound** [1] - 30:16
**speaking** [1] - 25:8
**specific** [1] - 25:21
**specify** [1] - 18:19
**SPRING** [1] - 1:23
**stage** [1] - 32:18
**stand** [8] - 8:5, 8:12, 8:18, 8:25, 9:3, 9:6, 16:20, 18:6
**standard** [15] - 26:20, 26:21, 27:1, 31:5, 31:10, 31:12, 31:18, 31:25, 32:2, 32:9, 32:13, 32:14, 32:15, 32:24, 33:4

**standards** [4] - 12:24, 13:5, 13:6, 33:19
**standing** [1] - 8:4
**start** [1] - 17:18
**started** [2] - 17:8, 31:15
**starting** [1] - 14:19
**state** [9] - 4:6, 8:14, 13:1, 14:6, 14:16, 17:7, 17:21, 17:22
**statement** [4] - 19:14, 24:7, 24:12, 24:21
**statements** [8] - 24:1, 24:5, 24:19, 25:10, 25:20, 25:22, 26:12
**STATES** [6] - 1:1, 1:22, 36:11, 36:13, 36:17, 36:20
**STENOGRAPHICALLY** [1] - 36:14
**still** [2] - 4:24, 32:10
**stood** [2] - 18:10, 21:3
**stop** [1] - 35:7
**storage** [1] - 22:16
**store** [1] - 16:11
**straightforward** [1] - 20:1
**STREET** [1] - 1:23
**stylistic** [1] - 8:3
**submit** [2] - 18:14, 18:16
**submitted** [3] - 10:6, 11:21, 11:22
**substantive** [1] - 32:19
**suffering** [2] - 21:1, 21:6
**sufficient** [1] - 12:24
**SUITE** [2] - 2:6, 2:10
**summary** [2] - 32:18, 33:7
**support** [1] - 18:21
**suppose** [1] - 13:10
**Supreme** [1] - 32:7
**surgery** [1] - 5:1
**surveillance** [1] - 27:23
**system** [1] - 22:2

**T**

**table** [1] - 8:6
**tactically** [1] - 30:16
**tailored** [1] - 26:17
**tentative** [3] - 11:19, 19:19
**terms** [3] - 10:16, 33:22, 35:8
**testified** [7] - 22:13, 22:14, 24:11, 24:20, 25:2, 26:9, 29:8
**testify** [4] - 13:12, 15:9, 23:6, 30:1
**testifying** [3] - 7:12, 7:13, 23:3

**testimony** [9] - 22:25, 23:15, 23:17, 26:22, 27:1, 27:16, 27:17, 29:11, 29:12
**Texas** [1] - 15:7
**thankfully** [1] - 7:20
**THAT** [2] - 36:12, 36:15
**THE** [110] - 2:4, 2:4, 2:13, 4:4, 4:13, 4:16, 4:22, 5:6, 5:12, 5:22, 6:11, 6:15, 6:18, 6:25, 7:2, 7:18, 7:22, 8:9, 8:17, 8:21, 9:2, 9:10, 9:13, 9:16, 9:22, 10:10, 10:15, 11:4, 11:9, 11:13, 11:25, 12:2, 12:19, 13:9, 13:20, 13:23, 14:5, 14:17, 14:20, 15:1, 15:4, 15:14, 15:17, 15:22, 16:1, 16:4, 16:7, 17:3, 17:12, 17:16, 17:25, 18:7, 18:19, 18:25, 19:5, 19:8, 19:15, 19:18, 20:3, 20:5, 20:8, 20:12, 20:19, 20:24, 21:9, 21:12, 21:15, 21:18, 22:18, 22:20, 23:14, 24:9, 24:23, 25:12, 25:18, 25:25, 26:5, 26:10, 26:21, 27:12, 27:14, 28:3, 28:10, 29:5, 29:10, 29:19, 30:3, 30:6, 30:18, 31:17, 31:23, 32:16, 33:4, 33:21, 34:8, 34:16, 34:24, 35:13, 36:10, 36:11, 36:13, 36:14, 36:15, 36:16, 36:17, 36:19, 36:20
**theory** [1] - 21:10
**third** [1] - 33:17
**THIS** [1] - 36:18
**three** [4] - 6:8, 6:9, 27:23, 33:13
**Thursday** [5] - 5:5, 5:11, 6:3, 10:18, 19:11
**tie** [1] - 12:23
**tied** [1] - 16:10
**timely** [1] - 28:11
**timing** [1] - 8:25
**timing..** [1] - 10:16
**TITLE** [1] - 36:13
**TO** [1] - 36:12
**today** [1] - 18:25
**took** [1] - 29:8
**top** [1] - 26:13
**total** [1] - 6:21
**totally** [1] - 11:8
**toward** [2] - 10:11, 15:18
**Tracy** [2] - 7:19, 7:25

**training** [4] - 29:23, 29:24, 29:25, 30:2
**TRANSCRIPT** [4] - 1:15, 36:14, 36:16, 36:18
**Trevor** [2] - 7:19, 14:13
**TREVOR** [3] - 1:7, 2:4, 36:5
**trial** [9] - 4:19, 4:24, 6:6, 7:15, 8:22, 11:8, 13:19, 14:15, 19:14
**trials** [1] - 32:23
**tried** [2] - 15:9, 32:16
**TRUE** [1] - 36:13
**truthfulness** [1] - 18:6
**try** [2] - 29:11, 30:16
**trying** [2] - 14:8, 27:10
**Tuesday** [7] - 4:20, 5:10, 6:12, 10:19, 31:15, 35:6, 35:11
**turn** [5] - 28:14, 28:18, 28:23, 30:3, 30:7
**turned** [8] - 22:7, 25:5, 26:10, 28:5, 28:11, 28:25, 29:9, 29:22
**two** [11] - 5:12, 5:17, 9:9, 14:22, 17:22, 20:11, 21:7, 23:25, 27:2, 27:20, 32:12
**Tyler** [4] - 14:11, 15:10, 21:5, 30:25
**types** [1] - 25:24
**typical** [1] - 9:25
**Tyra** [1] - 7:20

## U

**under** [10] - 13:1, 14:5, 18:2, 21:9, 26:22, 27:3, 30:22, 31:9, 31:13, 32:6
**unduly** [1] - 10:8
**unfair** [2] - 22:5, 22:11
**uniformed** [1] - 8:14
**UNITED** [6] - 1:1, 1:22, 36:11, 36:13, 36:17, 36:20
**unless** [4] - 4:18, 28:15, 29:20, 35:10
**unquote** [1] - 22:8
**unrelated** [1] - 20:11
**unshackled** [1] - 8:22
**up** [9] - 6:2, 6:4, 7:8, 8:23, 10:15, 16:25, 17:19, 18:20, 32:17
**update** [1] - 12:3
**useful** [1] - 34:13

## V

**various** [1] - 17:7
**verdict** [1] - 10:22
**verifying** [1] - 28:12

**version** [2] - 23:13, 32:24
**versions** [1] - 21:25
**video** [2] - 27:23, 27:25
**video-recorded** [1] - 27:25
**videotape** [1] - 24:4
**videotaped** [1] - 25:4
**viewed** [2] - 31:11, 31:12
**violate** [1] - 13:13
**violated** [2] - 15:20, 15:25
**VIRGINIA** [1] - 1:5
**voir** [2] - 9:23, 10:1
**vs** [2] - 1:10, 36:6

## W

**wait** [1] - 28:3
**walking** [1] - 8:24
**wants** [1] - 28:2
**wear** [1] - 8:6
**week** [11] - 6:6, 6:9, 6:12, 10:20, 18:16, 19:1, 19:3, 19:7, 19:11, 34:14, 35:2
**WEST** [1] - 2:16
**WESTERN** [1] - 1:3
**wife** [1] - 5:1
**willing** [2] - 34:12, 34:13
**WILSHIRE** [1] - 2:6
**wish** [1] - 14:21
**wishes** [1] - 7:8
**WITH** [2] - 36:16, 36:19
**withheld** [1] - 27:25
**witness** [11] - 8:5, 8:12, 8:18, 8:25, 9:3, 9:6, 16:19, 18:3, 18:6, 21:7, 29:13
**witnesses** [5] - 5:15, 5:18, 9:9, 22:15, 33:10
**woods** [7] - 14:1, 15:6, 15:20, 16:10, 16:13, 16:17, 17:1
**WOODS** [3] - 1:7, 2:4, 36:5
**Woods** [7] - 4:5, 7:19, 14:11, 14:13, 14:23, 15:10, 30:25
**Woods'** [1] - 21:5
**Woodson** [8] - 7:20, 14:3, 16:9, 16:12, 16:16, 16:17, 17:9, 17:15
**wording** [1] - 25:19
**words** [1] - 28:14
**write** [1] - 24:18
**written** [5] - 21:19, 21:21, 23:19, 24:6, 30:4

## Y

**year** [3] - 14:19, 15:13, 16:5
**years** [2] - 14:17, 16:13
**yourselves** [1] - 34:25